UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BENNETT VEAL and | * | DOCKET NO. 16-cv-3998 |
| ROSLYN VEAL | * | |
| | * | JUDGE ELDON E. FALLON |
| versus | * | |
| | * | MAG. JUDGE NORTH |
| | * | |
| WELLS FARGO BANK, N.A. | * | SECTION "L" |

ORDER AND REASONS

Before the Court is Defendant Wells Fargo Bank NA's ("Wells Fargo") Motion to Dismiss for Failure to State a Claim. (R. Doc. 13). Plaintiffs Bennett Veal and Roslyn Veal oppose the Motion. (R. Doc. 15). The Court has reviewed the briefs and the applicable law, and now issues this Order & Reasons.

I.     BACKGROUND

This case arises out of a residential mortgage default and the resulting foreclosure of Plaintiffs' home, located at 3880 Accacia Lane in Harvey, Louisiana (the "Property"). (R. Doc. 11 at 2). The Plaintiffs claim jurisdiction is proper under 28 USC §§ 1331 and 1367. *Id*. at 3.

On or about December 2, 2005, Plaintiffs obtained a $132,554.00 loan (the "Loan") from Franklin American Mortgage Company ("FAMC") to purchase the Property. *Id*. at 4. The Loan was insured by the Federal Housing Administration ("FHA") and was evidenced by a Promissory Note and a Louisiana FHA Security Deed, which named FAMC as the lender and Mortgage Electronic Systems, Inc. ("MERS") as the grantee or beneficiary of record. *Id*. MERS allegedly assigned the Loan to Wells Fargo on September 19, 2011. Plaintiffs made four separate loan modifications: May 13, 2009, April 5, 2010, April 17, 2010, and September 15, 2012. (R. Doc. 13-1 at 2). On or about July 1, 2014, Plaintiffs defaulted on the loan. *Id*. at 3.

On or about June 30, 2015, Wells Fargo sent a notice of default to Plaintiffs and indicated that Wells Fargo would be initiating foreclosure proceedings on the Property. (R. Doc. 11 at 4). On or about March 30, 2016, the Jefferson Parish Sheriff's Office notified Plaintiffs of the intent to sell the Property at a Sheriff's Auction on May 7, 2016. *Id.* at 5. The property was accordingly sold on May 7, 2016. *Id.*

Plaintiffs allege, but do not further explain, that they bear no responsibility for the default, but rather the default is due to the misapplication of payments by Wells Fargo. *Id.* at 5. They also aver that the language on their Note and Security Deed limited Wells Fargo's ability to accelerate the debt and foreclose on the Property. *Id.* Specifically, Plaintiffs point to limitations imposed by regulations of the Secretary of Housing and Urban Development ("HUD"), which are codified in CFR 24 § 203. *Id.* at 5-6. Plaintiffs claim these regulations are applicable because the loan was FHA-insured. *Id.* at 6.

Plaintiffs also cite to 24 CFR § 203.606(a), which requires the lender to have, or make a reasonable effort to have, a face-to-face interview with the borrower prior to foreclosure. *Id.* at 7. A reasonable effort is defined as a letter and a trip to the property if the property is located within 200 miles of the lender. *Id.* at 7-8; 24 CFR § 203.604(d). Plaintiffs allege that Wells Fargo is neither exempt from a face-to-face meeting nor in-person notice because Wells Fargo operates a branch office located less than 200 miles from the Property. *Id.* at 8. Plaintiffs claim that because Wells Fargo did not have a face-to-face meeting with them prior to foreclosure, Wells Fargo did not comply with the applicable regulations. *Id.* at 9.

Plaintiffs first seek declaratory relief under F.R.C.P. 65 and 28 USC § 2001 and ask the Court to find (1) that Wells Fargo did not have, or reasonably attempt to have, the required face-to-face interview; (2) that Wells Fargo did not comply with the required HUD regulations and,

accordingly, with the mortgage contract; (3) that Wells Fargo was required to comply with HUD regulations prior to foreclosing on the property; and (4) that Wells Fargo breached this obligation and prematurely commenced foreclosure proceedings. *Id*. at 10-11.

Second, Plaintiffs seek a preliminary injunction, alleging that their initial complaint and subsequent amended complaint serve as an injunction on the foreclosure sale of their home, and that the sale was therefore in violation of Plaintiffs' rights. *Id*. at 11-12. Plaintiffs argue they suffered irreparable loss and have no other adequate remedy at law. *Id*. at 11-12.

Third, Plaintiffs allege breach of contract because Wells Fargo failed to comply with the terms of the FHA-insured mortgage contract by failing to comply with HUD regulations. *Id*. at 14-15. Plaintiffs claim to have suffered mental anguish, emotional pain and suffering, and damage to their credit and reputation as a result of the breach of contract. *Id*. at 15. Plaintiffs seek resulting monetary damages and costs.

Fourth, Plaintiffs aver that Wells Fargo violated the Truth in Lending Act ("TILA") by failing to respond to Qualified Written Requests (QWRs) sent by Plaintiffs requesting a complete audit history and itemized statements. *Id*. at 16-17. Wells Fargo is a creditor as defined in the TILA and is therefore subject to disclosure requirements under the TILA. *Id*. at 17. Plaintiffs aver that Wells Fargo fraudulently failed to disclose required information under the TILA. *Id*. Plaintiffs seek damages, alleging that Wells Fargo's violation caused Plaintiffs mental anguish and emotional distress.

Finally, Plaintiffs allege that Wells Fargo violated the Real Estate Settlement Procedures Act ("RESPA") § 2605(e) by failing to notify Plaintiffs of the 2011 loan transfer. *Id*. at 19. The failure to notify allegedly caused payments to be inappropriately applied and/or credited to

Plaintiffs' mortgage account. (R. Doc. 11 at 19). Claiming they would be farther along in paying off their mortgage but for Wells Fargo's failure to notify, Plaintiffs seek damages.

## II.      PRESENT MOTION

Wells Fargo moves to dismiss Plaintiffs' claims on the grounds that Plaintiffs fail to state a claim. (R. Doc. 13-1). In their First Amended Complaint, Plaintiffs asserts claims for declaratory relief, preliminary injunctive relief, breach of contract, and violations of both the TILA and the RESPA. Wells Fargo argues that Plaintiffs fail to state a claim for any of the above causes of action, and the case should therefore be dismissed. (R. Doc. 13-1 at 1). Plaintiffs timely responded in opposing this Motion to Dismiss. (R. Doc. 15). The Court will discuss each party's arguments in turn.

Wells Fargo alleges that Plaintiffs have failed to state a claim for which relief can be granted under Fed. R. Civ. P. 12(b)(6). They base their argument on La CCP 2642, which states that "[d]efenses and procedural objections to an executory proceeding may be asserted . . . [either] through an injunction proceeding to arrest the seizure and sale . . . or a suspensive appeal from the order directing the . . . seizure and sale," and alleges that because the seizure and sale of the property were recorded, any defects and procedural objections have been waived and are now barred. (R. Doc. 13-1 at 6). Plaintiffs first note that Article 2642 is inapposite – they are not bound by Article 2642's requirement to file an injunction or suspensive appeal because they have not requested the court modify the executory foreclosure. (R. Doc. 15 at 6). Plaintiffs contend that their breach of contract action cannot be asserted in an executory proceeding under the Louisiana Code of Civil Procedure, and article 2642 is not applicable to a breach of contract claim. *Id*.

Wells Fargo next argues that even if Plaintiffs' claims are not barred, Plaintiffs are nonetheless not entitled to declaratory judgment because they have failed to demonstrate that there is a substantial likelihood that they will suffer future injuries. (R. Doc. 13-1 at 7). Because Plaintiffs' request for declaratory judgment mirrors their breach of contract claim, Wells Fargo contends that there is no uncertainty that must be corrected by a declaratory judgment. *Id*. at 8. Wells Fargo also urges the court to dismiss as moot Plaintiffs' claim seeking preliminary injunctive relief in connection with the sale of the Property, because the Property has already been sold. *Id*. at 8.

Wells Fargo further contends that although Plaintiffs bring forth a breach of contract claim, they have not alleged any recoverable damages as the result of the alleged breach. *Id*. at 9. They assert that Plaintiffs have no claim for emotional distress arising from breach of contract because the mortgage contract was not intended to gratify a nonpecuniary interest, and there is no evidence that in breaching the contract, Wells Fargo intended to aggrieve Plaintiffs' feelings. *Id*. Furthermore, Wells Fargo claims that any failure to hold a face-to-face meeting did not cause Plaintiffs' default, prevent them from curing the default, or in any way damage the Plaintiffs. *Id*. at 10. In response, Plaintiffs argue that when HUD regulations are expressly incorporated into a contract and the lender breaches those provisions, a cause of action for breach of contract exists. (R. Doc. 15 at 7-8). Plaintiffs reiterate their contention that the damages they suffered as a result of this breach of contract include both mental anguish, emotional pain and suffering, and damage to their credit and reputation. *Id*. at 8.

Finally, Wells Fargo argues that they did not violate TILA or RESPA, because Plaintiffs' QWRs were sent after the Property had been sold and the loan extinguished. (R. Doc. 13-1 at 11). Furthermore, Wells Fargo notes that Plaintiffs have not alleged any actual damages arising

from Wells Fargo's failure to respond. *Id*. Plaintiffs note that there is no case law suggesting that Wells Fargo is released from their obligation to answer Plaintiffs' request for information, and under TILA and RESPA, servicers are required to provide the information sought by the borrower. (R. Doc. 15 at 9). Plaintiffs contend that, had a response been provided, they may have been able to reinstate or modify their loan. *Id*.

## III.    LAW AND ANALYSIS

### A.    Motion to Dismiss Standard

The Federal Rules of Civil Procedure permit a defendant to seek a dismissal of a complaint when a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A district court, however, must construe facts in the light most favorable to the nonmoving party. *See Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232–33 (5th Cir. 2009). Furthermore, the court must accept as true all factual allegations contained in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (internal citations omitted)). Dismissal is appropriate only if the complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corporation et al. v. William Twombly,* 550 U.S. 544, 570 (2007). A motion to dismiss under rule 12(b)(6) is "viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982).

### B.       Collateral Attack on Foreclosure Proceeding

Louisiana Revised Statute 13:4112 states that no action to annul the judicial sale of immovable property by executory process may be instituted for "reason of objection to the form or procedure in the executory proceedings, or by reason of the lack of authentic evidence to support the order and seizure, where the sheriff executing the foreclosure has . . . filed the sale for recordation in the conveyance records of the parish." La. R.S. 13:4112.

An executory proceeding is one which is "used to effect the seizure and sale of property, without a previous citation or judgment, to enforce a mortgage . . . [that is] evidenced by an authentic act importing a confession of judgment." La. C. Civ. P. art. 2631. The owner of the property may stop the seizure and sale of the property by injunction when the debt is either extinguished or legally unenforceable, or if the procedure required by law for an executory proceeding has not been followed. La. C. Civ. P. art. 2751. The owner may also object to the seizure and sale of the property through a suspensive appeal from the order directing the issuance of the writ of seizure and sale, or both an injunction and a suspensive appeal. La C. Civ. P. art. 2642. In general, in a suspensive appeal, the only argument that can be raised is regarding the authenticity of the executory process. *See, e.g. Commercial Securities Co., Inc. v. Ross*, 318 So. 2d 668 (La. App. 2d Cir. 1975); *Wells v. Standard Mortgage Corp.*, 865 So. 2d 93, 95 (La. App. 4th Cir. 10/9/02), writ denied, 836 So. 2d 52 (La. 1/24/03). Plaintiffs took neither of these actions.

Nevertheless, a debtor who fails to file an injunction or a suspensive appeal to stop the sale may still, under limited circumstances, attempt to nullify the completed seizure and sale. *Gulf Coast Bank and Trust Co. v. Warren*, 125 So. 3d 1211, 1217 (La. App. 4 Cir. 9/18/13). If, for example, the creditor is the adjudicatee at the sale, the debtor can attack the sale based on

substantive defects in the executory proceeding. *Taurus Leasing Corp. v. Charlaire,* 400 So. 2d 303, 305 (La. App. 4 Cir. 1981). Objections to minor defects of form or procedure, however, are not sufficient grounds to annul a sale. La. Rev. Stat. art. 13:4112.

The Louisiana Code of Civil Procedure establishes three methods of civil proceeding: ordinary, summary, and executory. La. C. Civ. P. art. 851. Ordinary proceedings and executory proceedings are regulated by separate provisions. *Id.* If a borrower defaults on a mortgage loan, the lender can enforce the mortgage through either ordinary or executory proceedings. La. C. Civ. P. 3721. If the lender chooses to enforce through an ordinary proceeding, the lender must take the borrower to court and the court must issue a judgment before the lender can seize or sell the property. If, however, there is a clause in the mortgage contract permitting the lender to enter a judgment against the borrower, the lender may enforce the mortgage through an executory proceeding and will not need to go to court before effecting a seizure and sale. *See Property Asset Management, Inc. v. Pirogue Cove Apts.*, 693 So. 2d 1217, 1222 (La. App. 4 Cir. 4/11/97).

Louisiana courts distinguish between actions challenging an executory foreclosure proceeding and actions challenging other circumstances attendant to the foreclosure proceedings. *Deutsche Bank Trust Co. America v. Ochoa*, 120 So. 3d 735, 739 (La. App. 5 Cir. 5/23/13); *Avery v. Citimortgage, Inc.*. 15 So. 3d 240, 422 (La. App. 1 Cir. 5/13/09). La. C. Civ. P. 464 provides that actions can only be cumulated if they employ the same form of procedure. For example, if a mortgage holder files an executory proceeding against a debtor seeking to enforce a mortgage and the debtor responds with a demand for damages that requires an ordinary proceeding, those actions cannot be cumulated and must be severed. *Deutsche Bank*, 120 So. 3d at 739.

Plaintiffs did not attempt an injunction proceeding or a suspensive appeal prior to the sale of the property. However, Plaintiffs may nonetheless bring a valid breach of contract claim. *See Deutsche Bank*, 120 So. 3d at 739. Wells Fargo initiated an executory proceeding against Plaintiffs to enforce the mortgage. (R. Doc. 13-1 at 3). Plaintiffs seek to bring a breach of contract action, which is an ordinary proceeding. (R. Doc. 15 at 6). Because actions cannot be cumulated, Plaintiffs were proper in bringing a separate breach of contract action.

### C.      Breach of Contract

Plaintiffs claim that Wells Fargo breached their mortgage contract by failing to perform their contractual obligation to schedule a face-to-face meeting. By doing so, Wells Fargo denied them the ability to cure the defect in their payments. (R. Doc.1 at 16). Plaintiffs may legitimately bring a breach of contract claim. Under Louisiana law, the essential elements of a breach of contract claim are 1) the obligor's undertaking of an obligation to perform, 2) the obligor's failure to perform the obligation, and 3) damages caused by failure to perform. *Favrot v. Favrot*, 68 So. 3d 1099, 1108-09 (La. Ct. App. 4 Cir. 2011).

The Fifth Circuit recently held that "HUD regulations do not give the borrower a private cause of action unless the regulations are expressly incorporated into the lender-borrower agreement." *Johnson v. World Alliance Financial Corp.*, 2016 WL 3900824 (5th Cir. July 18, 2016); see also *Smith v. JPMorgan Chase Bank, N.A.*, 519 Fed. Appx. 861, 863-64 (5th Cir. 2013) (holding that federal regulations can form the basis of a breach of contract claim if the parties have expressly incorporated them into the agreement). Plaintiffs allege in their complaint that their mortgage note incorporated regulations established by HUD to govern foreclosure proceedings. (R. Doc. 11 at 6). The regulation referenced is 24 CFR § 203.606(b), which requires the mortgagee to arrange a face-to-face interview with the mortgagor, or make a

reasonable effort to arrange the meeting, before three full monthly installments are unpaid. 24

CFR § 203.606(b). 24 CFR § 203.606(d) defines a reasonable effort as, at a minimum, one letter

sent by certified mail, and one trip to see the mortgagor at the mortgaged property if the property

is within 200 miles of the mortgagee office. 24 CFR § 203.606(d). Because the HUD regulations

were incorporated, Wells Fargo had an obligation to perform.

Plaintiffs allege that Wells Fargo maintains an office within 200 miles of the mortgaged

property yet failed to contact them regarding a face-to-face interview or visit to the property. (R.

Doc. 11 at 9). Wells Fargo contends that they did reach out to Plaintiffs in August, 2012. (R.

Doc. 13-1 at 4). Plaintiff nonetheless maintain that the requirement to schedule a face-to-face

interview is an obligation established by the contract, which Wells Fargo failed to perform.

Taking Plaintiffs' claims as true, Wells Fargo failed to perform their contractual duty.

Plaintiffs claim that Wells Fargo's failure denied them the opportunity to cure the default.

(R. Doc. 11 at 15). Wells Fargo maintains that Plaintiffs have not alleged that they had no other

notice of default, nor did they allege that they were otherwise unaware of how to correct the

default. (R. Doc. 13-1 at 10). Plaintiffs allege that the reason they defaulted was because they

were not notified of the sale of their loan to Wells Fargo and their payments were accordingly

misapplied. They then allege that the lack of face-to-face meeting resulted in their inability to fix

their mortgage default created by the misapplied funds. Wells Fargo, on the other hand, says the

Plaintiffs should have known about the issues despite the failure to have a face-to-face meeting.

As it stands, Plaintiffs' complaint fails in that it does not request damages recoverable

under Louisiana contract law. Louisiana law establishes that damages for nonpecuniary loss, that

is, loss of something other than money such as emotional distress, arising from a breach of

contract can only be recovered if (1) the contract itself is intended to gratify a nonpecuniary

interest, that is, the contract is about something other than money, or (2) the obligor intended, through his failure, to aggrieve the feelings of the obligee. La. Civ. C. art. 1998. This court has previously held that a mortgage or loan does not, by its nature, gratify a nonpecuniary interest. *Floyd v. Wells Fargo Home Mort. Co.*, 848 F.Supp. 2d 635, 645 (E.D. La. 2012). Furthermore, there is no indication that Wells Fargo intended to aggrieve Plaintiffs feelings. To satisfy this prong, Plaintiffs were required to demonstrate that the breach was "'calculated to inflict grief, vexation, or inconvenience on the other party.'" *Pinero v. Jackson Hewitt Tax Service Inc.*, 594 F.Supp. 2d 710, 718 (E.D. La. 2009) (quoting 6 Saul Litvinoff La. Civ. L. Treatise §6.16 (2d ed.)). Accordingly, because Plaintiffs only request nonpecuniary damages, which are not recoverable under a mortgage contract, they fail to state a claim for recovery under breach of contract.

### D.     Declaratory Judgment

For a plaintiff to be entitled to declaratory relief, they must demonstrate that there is a substantial likelihood they will suffer a future injury. *Kitty Hawk Aircoargo, Inc. v. Chao*, 418 F.3d 453, 458 (5th Cir. 2005). Furthermore, when a plaintiff's declaratory judgment request is duplicative of their breach of contract claim, declaratory relief is redundant. *See Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 636 (N.D. Tex. 2010). Plaintiffs' plea for declaratory relief mirrors their breach of contract claim. Resolution of the substantive breach of contract claim will resolve the issues raised in the claim for declaratory relief. (R. Doc. 11 at 9-10). Plaintiffs are therefore not entitled to declaratory relief.

### E.     Injunctive Relief

Plaintiffs seek an injunction to enjoin the sale of the property. However, because the property has already been sold at a sheriff's sale, this claim is denied as moot.

11

**F.     TILA & RESPA**

Plaintiffs' claims under TILA and RESPA also fail, because the QWRs were sent after the Property had already been sold. (R. Doc. 13-1 at 7, 16). RESPA applies to federally-related mortgage loans. 12 U.S.C. § 2601 et. seq. TILA governs residential mortgage loans, which are consumer credit transactions secured by a mortgage, deed of trust, or other security interest on residential real property. 15 U.S.C. §1602 cc(5). However, at the time of the filing, the Property had already been sold, extinguishing the mortgage. *See* La. Civ. C. art. 3319 (establishing that a mortgage is extinguished by confusion when it is acquired by the obligee or by discharge through execution).

Therefore, no mortgage existed at the time Plaintiffs sent their inquiries, and Wells Fargo had no obligations under TILA and RESPA.

**IV.     CONCLUSION**

For the foregoing reasons, **IT IS ORDERED** that Wells Fargo's Motion to Dismiss for Failure to State a Claim (R. Doc. 13) is **GRANTED IN PART, DENIED AS MOOT IN PART, AND GRANTED WITHOUT PREJUDICE IN PART**. Because Plaintiffs' claims for Declaratory Judgment, and relief under TILA and RESPA fail as a matter of law, those claims are **DISMISSED WITH PREJUDICE**. However, because Plaintiffs state a possibly cognizable claim under breach of contract but fails to request appropriate damages, Plaintiffs' claim for breach of contract is **DISMISSED WITHOUT PREJUDICE**, leaving Plaintiff the opportunity to re-file a proper claim for breach of contract. **IT IS FURTHER ORDERED** that the claim for Injunctive Relief is **DENIED AS MOOT**.

New Orleans, Louisiana, this 13th day of October, 2016.

UNITED STATES DISTRICT JUDGE